**United States District Court**
**Southern District of New York**
_____

| | |
|---|---|
| **U.S. BANK NATIONAL ASSOCIATION,** | **12 Civ. 423 (JGK)** |
| Plaintiff, | OPINION AND ORDER |
| - against - | |
| **NESBITT BELLEVUE PROPERTY LLC, ET AL.,** | |
| Defendants. | |

_____

**JOHN G. KOELTL, District Judge:**

This case involves the plaintiff's attempt to appoint a receiver for the defendants' properties because of the defendants' default on loans for which the properties were collateral. U.S. National Bank ("U.S. Bank," the "plaintiff," or the "Trustee") is the Trustee, pursuant to a March 2006 Pooling and Servicing Agreement (the "PSA") of various loans, including loans made to the defendants. The defendants are limited liability companies which own and operate, under the Embassy Suites franchise, hotels that are collateral for the defendants' loans. In January, 2012, the Trustee filed by Order to Show Cause a motion for the appointment of a temporary receiver for the defendants' properties. The defendants now move to dismiss this case for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

1

I.

The facts relevant to this motion are undisputed unless otherwise noted.

U.S. Bank has alleged that this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 based on diversity of citizenship. (Compl. ¶ 12.) There is no dispute that the amount in controversy is greater than $75,000. The issue is whether there is complete diversity of the parties.

U.S. Bank asserts, and the defendants do not contest, that it is a national banking association with its main office in the state of Ohio. (Compl. ¶ 1.) U.S. Bank is therefore a citizen of Ohio. See Wachovia Bank v. Schmidt, 546 U.S. 303, 318 (2006). U.S. Bank also asserts, and the defendants do not contest, that the defendants are limited liability companies, and that neither the defendants' members, nor the members or partners of the defendants' corporate parents, are citizens of Ohio. (Compl. ¶¶ 4-11.)

In this case, the plaintiff is styled as "U.S. Bank National Association, As Trustee, As Successor-In-Interest To Bank Of America, N.A., As Trustee For The Registered Holders Of GS Mortgage Securities Corporation II, Commercial Mortgage Pass-Through Certificates, Series 2006-GG6, acting by an through Torchlight Loan Services, LLC as Special Servicer under the Pooling and Servicing Agreement dated as of March 1, 2006."

2

(Compl.; see also Compl. ¶ 3 ("U.S. Bank, not individually, but solely in its capacity as . . . Trustee under the PSA, acting by and through the Special Servicer, brings this action as Plaintiff . . . .").)  Torchlight Loan Services, LLC, ("Torchlight," or the "Special Servicer") is a limited liability company that is incorporated in the state of Delaware.  Under the PSA, the Special Servicer "shall, for the benefit of the Certificateholders, direct, manage, prosecute and/or defend any and all claims and litigation relating to . . . the enforcement of the obligations of each Mortgagor under the . . . Loan Documents . . . ."  (Crossman Repl. Decl. Ex. E ("March 1, 2006 PSA"), at § 3.12(d).)  There is no dispute that, if Torchlight were considered a party for the purposes of diversity of citizenship, there would not be complete diversity of citizenship in this case, and thus the Court would lack subject matter jurisdiction.

The issue is whether Torchlight's citizenship must be considered for the purpose of assessing this Court's diversity jurisdiction.

**II.**

There are two separate, though related, inquiries at issue here.  The first is whether U.S. Bank is a real party in interest in this case for the purposes of Rule 17 of the Federal

3

Rules of Civil Procedure, which provides that "[a]n action must be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a).  "This means that an action must be brought by the person who, according to the governing substantive law, is entitled to enforce the right." Oscar Gruss & Son, Inc. v. Hollander, 337 F.3d 186, 193 (2d Cir. 2003).  Rule 17(a) explicitly includes a "trustee of an express trust" as an example of a person or entity that can sue on its own without joining the person for whose benefit the action is brought.  See Fed. R. Civ. P. 17(a)(1)(E).  The defendants assert that U.S. Bank is not the real party in interest in this case, because Torchlight must prosecute this action under the PSA.[1]  However, this argument fails, because the PSA does not convey to Torchlight the exclusive power over claims such as the one asserted here.  See LaSalle Bank National Ass'n v. Nomura Asset

---

[1] The defendants, in their briefing on this motion, argue that Torchlight is a necessary party in this case because U.S. Bank is not the real party in interest.  However, the defendants do not bring this motion pursuant to Rule 12(b)(7) and Rule 19, nor do they argue that Torchlight is required to be joined within the meaning of Rule 19 and the cases interpreting that Rule. See e.g., Johnson v. Smithsonian Inst.,  189 F.3d 180, 188 (2d Cir. 1999).  The plaintiff asserts that it was in fact Torchlight who brought this action in the name of U.S. Bank and the caption is entitled "U.S. Bank National Association, as Trustee . . . acting by and through Torchlight . . . as Special Servicer under the [PSA]."  (See Ginsburg Decl. ¶ 4.)  In any event, the Court must determine whether U.S. Bank is the real party in interest under Rule 17(a).

Capital Corp., 180 F. Supp. 2d 465, 470 (S.D.N.Y. 2001) ("Defendants argue that it is "clear from the express terms of the [PSA] that it is the Special Servicer, Lend Lease-and not the nominal trustee [LaSalle]-that has the power to manage, dispose of, and maximize recovery of the loan at issue, including through litigation," and, therefore, Lend Lease, not LaSalle, is the real party in interest.  A review of the PSA, however, does not support this contention.").

If a trustee possesses "customary powers to hold, manage, and dispose of assets," then that trustee is a real party in interest.  Navarro Sav. Ass'n v. Lee, 446 U.S. 458, 464 (1980).  Whether the trustee possesses such powers is a question that is resolved based on the underlying trust document.  See, e.g., LaSalle Bank Nat. Ass'n v. Lehman Bros. Holdings, Inc., 237 F. Supp. 2d 618, 632 (D. Md. 2002) (interpreting PSA under New York law).  In this case the trustee has those customary powers under the PSA.  Compare Nomura, 180 F. Supp. 2d at 470 (holding that the Trustee had such customary powers when "[s]ection 2.01 of the PSA state[d] that ASC 'does hereby sell, transfer, assign, set over and otherwise convey to the Trustee [LaSalle] . . . all the right, title, and interest' that ASC then held in the mortgages.") with March 1, 2006 PSA, at § 2.01(a) ("Depositor . . . does hereby . . . assign, sell, transfer, set over, and otherwise convey to the Trustee . . . all the right, title and

interest of the Depositor" in the mortgage loans covered by the PSA and various related rights).  The issue is whether the Trustee is entitled to enforce the right to a receiver under the PSA.

Courts in this Circuit have held that PSAs containing language virtually identical to the PSA at issue here allowed the trustees in those cases to bring suit in their own right, consistent with Rule 17, in the event of default.  <u>Compare</u> <u>Wells Fargo Bank, N.A., Trustee v. Konover</u>, No. 05 Civ. 1924, 2009 WL 2710229, at *3 (D. Conn. Aug. 21, 2009) ("[T]he Wells Fargo PSA provides the Trustee with power to take legal action the event of default.  Specifically, the Wells Fargo PSA provides that, in the event of a default, the Trustee may 'take such action to enforce such payment or performance, including the institution and prosecution of appropriate legal proceedings.'"); <u>and</u> <u>Nomura</u>, 180 F. Supp. 2d at 471 (citing PSA that provided that in the event of a default the trustee may "take such action as may be appropriate to enforce such payment performance, including the institution and prosecution of appropriate proceedings"); <u>with</u> March 1, 2006 PSA at § 3.07(c) ("[I]f any default occurs in the making of a payment due under any Permitted Investment . . . the Trustee may . . . take such action as may be appropriate to enforce such payment or performance, including the institution and prosecution of appropriate proceedings.").  They have so

6

held despite nearly identical language conveying "vast powers" to the special servicer through the terms of the PSA and through separate power of attorney agreements.  Konover, 2009 WL 2710229, at *4; see Nomura, 180 F. Supp. 2d at 471 (rejecting the assertion that the Special Servicer was the real party in interest because it was "specifically granted power by the PSA to manage and direct litigation intended to maximize recovery of loans that have defaulted" and concluding that "the mere fact that the PSA assigns certain duties to Lend Lease in connection with maximizing recovery of defaulted loans does not affect the basic premise, announced in Navarro, that a trustee of an express trust is the real party in interest when suing on behalf of that trust"); see also Lehman, 237 F. Supp. 2d at 633 ("Merely because the PSA in this case delegates to [the special servicer] the right to institute a suit in its capacity as Special Servicer does not affect the basic premise that the trustee of an express trust is the real party in interest when suing on behalf of the trust.").  The terms of the PSA here are, as highlighted above, essentially identical to those in Konover and Nomura.  U.S. Bank could bring this suit in its own right, as a real party in interest under Rule 17, notwithstanding the role accorded to Torchlight by the PSA, which hypothetically, would allow Torchlight to be a proper participant in the action.[2]

---

[2] The defendants cite CWCapital Asset Management, LLC v. Chicago

7

The defendants' argument that Torchlight is a necessary party because U.S. Bank is not a real party in interest therefore must fail.

**III.**

The second issue is whether, notwithstanding the fact that U.S. Bank is a real party in interest for the purposes of Rule

---

Properties, LLC, 610 F.3d 497, 500 (7th Cir. 2010).  In that case, the plaintiff was the servicer, and not the trustee.  Id. at 500.  The Court of Appeals for the Seventh Circuit rejected the argument that the servicer CWCapital was not the real party in interest, because it found that the "trust holds merely the bare legal title; the Pooling and Servicing Agreement delegates what is effectively equitable ownership of the claim (albeit for eventual distribution of proceeds to the owners of the tranches of the mortgage-backed security in accordance with their priorities) to the servicer."  Id. at 501.  That decision is distinguishable.
    Unlike in this case and the other cases from district courts in this Circuit, the court in CWCapital did not indicate that the PSA in that case contained terms allowing the Trustee to "take such action as may be appropriate to enforce such payment or performance, including the institution and prosecution of appropriate proceedings."  See, e.g., Konover, 2009 WL 2710229, at *4.  Such provisions would have substantially undermined the Court of Appeals' assertion that the claim had been delegated in its entirety to the special servicer.  Moreover, the issue in this case is not, as it was in CWCapital, whether the Special Servicer could have brought the claim in its own right, but whether the citizenship of the special servicer matters for the purposes of diversity jurisdiction.  Complete diversity was not at issue in CWCapital.  See 610 F.3d at 500.

17, Torchlight's citizenship should be considered for diversity purposes.[3]

The Court of Appeals for the Second Circuit has explained that "although there exists a 'rough symmetry' between the 'real party in interest' standard of Rule 17(a) and the rule that diversity jurisdiction depends upon the citizenship of real parties to the controversy . . . the two rules serve different purposes and need not produce identical outcomes in all cases." Oscar Gruss, 337 F.3d at 193 (quoting Navarro, 446 U.S. 460).  A party's citizenship is taken into account for diversity purposes when it is a "real and substantial part[y] to the controversy." Id.

Under Oscar Gruss, the first question is whether both U.S. Bank and Torchlight could be considered "real and substantial parties to the controversy."[4]  If both could be so considered,

---

[3] "Federal courts have diversity jurisdiction over controversies between 'citizens of different States.'" Oscar Gruss, 337 F.3d at 193 (citing 28 U.S.C. § 1332(a)(1)).  It is axiomatic that, "[i]f subject matter jurisdiction is lacking, the action must be dismissed." Id. (citation and internal quotation marks omitted).

[4] It is not clear whether Torchlight is, as a formal matter, a party to this litigation.  The plaintiff has asserted that Torchlight brought this action as the Special Servicer on behalf of U.S. Bank.  However, whether Torchlight is formally a party is irrelevant because when a party is acting solely as a representative, and does not have an independent stake in the litigation, "the citizenship of the represented individuals

9

the Court's next task is to ask whether U.S. Bank and Torchlight have improperly colluded to avoid a consideration of Torchlight's citizenship.  Id. at 194-95.

"To establish whether a plaintiff is a 'real and substantial party to the controversy,' a crucial distinction must be made between a plaintiff who sues solely in his capacity as an agent, on the one hand, and, on the other, a plaintiff who sues not only as an agent, but also as an individual who has his own stake in the litigation."  Id. at 194.  There can be no dispute that U.S. Bank has "a valid stake in the litigation sufficient to be considered a "real and substantial" party for diversity purposes."  Id.  U.S. Bank is the trustee for the mortgage loans at issue, holds "all the right, title and interest" in them under the PSA, March 1, 2006 PSA, at § 2.01(a), and has a fiduciary obligation to the certificateholders to see that the loans are paid and that the value of the collateral is maintained.

The issue is whether Torchlight can be considered a real and substantial party to the controversy.  "[A] plaintiff who sues solely in his capacity as an agent" is not a real and

---

control[s] for diversity purposes." Oscar Gruss, 337 F.3d at 193 (citing Airlines Reporting Corp. (ARC) v. S & N Travel, Inc., 58 F.3d 857, 862 (2d Cir. 1995)).

substantial party for diversity purposes. Oscar Gruss, 337 F.3d at 194.; see also Airlines Reporting Corp. v. S and N Travel, Inc., 58 F.3d 857, 862 (2d Cir. 1995) (a party's "corporate citizenship [is not] controlling when it acts merely as an agent representing the interests of others. In such a case, the citizenship of the represented individuals controls for diversity purposes, as they are the real and substantial parties to the dispute."). In this case, the Special Servicer's stake in the litigation is entirely due to its role as the representative of the Trustee under the PSA. See, e.g., March 1, 2006 PSA, at § 3.01(a) ("[N]either the Master Servicer nor the Special Servicer shall, without the Trustee's written consent . . . initiate any action, suit or proceeding solely under the Trustee's name without indicating the Master Servicer's or Special Servicer's, as applicable, representative capacity.").[5] Torchlight does not have "its own stake in the

---

[5] The defendants argue that Torchlight's parent company is a junior certificateholder under the PSA and thus Torchlight has an independent stake in maximizing the recovery on any loan because it is the last holder in line for payment. This argument is unpersuasive. The fact that another, related entity is a certificateholder does not give Torchlight, the Special Servicer, an independent stake in the litigation apart from its representative duties under the PSA. Cf. Nomura, 180 F. Supp. 2d at 471 ("[T]he mere fact that the PSA assigns certain duties to [the special servicer] in connection with maximizing recovery of defaulted loans does not affect the basic premise . . . that

litigation" apart from its duties under the PSA to represent the Trustee, the real party in interest, in certain actions affecting the Trustee's interests. Oscar Gruss, 337 F.3d at 194; Airlines Reporting, 58 F.3d at 862 ("In initiating this lawsuit . . . . ARC simply sought to fulfill its obligations under the CSA as both collection agent and attorney for those twenty-nine air carriers owed money by S & N. . . . ARC is a mere conduit for a remedy owing to others, advancing no specific interests of its own."). Accordingly, it is the citizenship of U.S. Bank, the represented party and the real party in interest in this litigation, that controls for the purpose of assessing diversity jurisdiction. See Konover, 2009 WL 2710229, at *4 ("[B]ecause Wells Fargo as the Trustee has legal title and the power to manage the assets and initiate litigation, which delegation to [the Special Servicer] does not negate, its own citizenship forms the basis of diversity jurisdiction independent of the citizenship of individual Certificateholders." (citation omitted)).

Because Torchlight's citizenship is not relevant to the existence of complete diversity in this case even if Torchlight is a party, it is irrelevant whether U.S. Bank and Torchlight attempted to avoid consideration of Torchlight's citizenship in

---

a trustee of an express trust is the real party in interest when suing on behalf of that trust.").

the diversity analysis.  It is irrelevant both because Torchlight's citizenship as a representative party would not destroy diversity and because U.S. Bank is a real party in interest with a sufficient stake to bring this litigation.  See Oscar Gruss 337 F.3d at 195 ("Where multiple parties all have a financial interest in a lawsuit, a strategic choice of parties in order to maintain diversity is not considered to be collusive so long as the party chosen to bring the suit is in fact the master of the litigation." (quoting Transcontinental Oil Corp. v. Trenton Prods. Co., 560 F.2d 94, 103 (2d Cir. 1977))).

In sum, it is the citizenship of U.S. Bank, the Trustee and the real party in interest, and not Torchlight, the special servicer and representative, that matters for the purposes of assessing diversity jurisdiction in this case.  Accordingly, the defendants' motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure is **denied**.

### IV.

The next issue is the underlying motion for a receiver.  In recent correspondence, U.S. Bank has indicated that the properties at issue in this litigation are in danger of losing their status as Embassy Suites franchises, and has forwarded to the Court default notices from Hilton Worldwide in support of

that assertion.  The defendants seek the opportunity to rebut or explain that assertion.

Whether a federal court should appoint a receiver in a diversity action is governed by federal law.  <u>Varsames v. Palazzolo</u>, 96 F. Supp. 2d 361, 365 (S.D.N.Y. 2000).  "The appointment of a receiver is considered to be an extraordinary remedy, and should be employed cautiously and granted only when clearly necessary to protect plaintiff's interests in the property."  <u>Rosen v. Siegel</u>, 106 F.3d 28, 34 (2d Cir. 1997) (internal alterations and quotation marks omitted).  "The following factors are considered relevant to establishing the need for a receivership:

> 'Fraudulent conduct on the part of defendant; the imminent danger of the property being lost, concealed, injured, diminished in value, or squandered; the inadequacy of the available legal remedies; the probability that harm to plaintiff by denial of the appointment would be greater than the injury to the parties opposing appointment; and, in more general terms, plaintiff's probable success in the action and the possibility of irreparable injury to his interests in the property.'"

<u>Varsames</u>, 96 F. Supp. 2d at 365 (quoting WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 2983 (1999)) (internal alterations omitted).  There is plainly a factual dispute about the existence of any imminent danger of the dimunition of the value of the properties.  Accordingly, the Court will hold an evidentiary hearing on that issue on **Wednesday, May 9, 2012 at 2:00 p.m.**

14

## CONCLUSION

The Court has carefully considered all of the parties' arguments. To the extent not specifically addressed above, they are either moot or without merit. For the reasons stated above, the defendants' motion to dismiss is **denied**. The Court will hold an evidentiary hearing in this case on **Wednesday, May 9, 2012 at 2:00 p.m.**

The Clerk is directed to close Docket No. 40.

SO ORDERED.

Dated:   New York, New York
         May 7, 2012

_____
John G. Koeltl
United States District Judge